(August 20, 1986)

■ In the Matter of BERNHARDT KARP, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Respondent, an attorney admitted to this Department in November 1964, moves to confirm a Referee's report which, while finding him guilty of professional misconduct, recommended that he not be suspended from the practice of law. Respondent currently maintains a law office in the City of Hudson.

Petitioner has cross-moved for an order confirming the Referee's report as to the finding of professional misconduct but disaffirming the recommended sanction.

On May 2, 1985, respondent was convicted in Federal District Court for the Northern District of New York upon his plea of guilty of violating 26 USC § 7207, a misdemeanor, in that he willfully submitted to the Internal Revenue Service (IRS) a document known by him at the time to be false and fraudulent as to a material matter. As a result of his conviction, respondent was fined the sum of $1,000. No sentence of imprisonment or period of probation was imposed. The crime of which respondent was convicted constituted a "serious crime" within the meaning of Judiciary Law § 90 (4) (d). On October 11, 1985, this court granted respondent's motion to set aside the automatic suspension provided for by that statute and referred the matter to a Referee for a hearing, report and recommendation (Judiciary Law § 90 [4] [h]).

Respondent's conviction arose out of facts surrounding the transfer of shares of stock of Pine Lane Poultry Farm, Inc., which were owned by Martha Gellert. It appears from the record that on December 28, 1978 Martha Gellert and her son Philip, the corporate president, signed an agreement providing for the purchase by Philip of Martha's shares of stock in the corporation. Respondent, who was the accountant for the

corporation, subsequently determined that the agreement, which was drawn by another attorney, should have reflected a redemption of Martha's stock by the corporation rather than a sale to Philip in accordance with the family's original intent. Thereafter, respondent prepared another agreement containing the same terms as the December 28, 1978 agreement except that the corporation was identified as the purchaser of the stock. This revised agreement was also dated December 28, 1978, signed by Philip and Martha Gellert and acknowledged by them before respondent as a notary on February 9, 1979. In early 1981, as a result of an audit of the corporation, respondent was requested by the IRS to produce the revised agreement signed by the Gellerts. Unable to locate the original document, respondent affixed the Gellerts' signatures to a blank copy of the agreement and further directed a secretary in his office to sign the name of one Sherene C. Tiano as notary indicating that the Gellerts had acknowledged the signing of the document before Tiano on December 28, 1978. The submission by respondent of this fabricated document to the IRS in July 1981 formed the basis of the criminal prosecution resulting in his guilty plea.*

Based upon the above facts and respondent's plea of guilty, the Referee concluded that respondent's act in fabricating the revised agreement was "reckless and wrong" but that it was "not intended to do more than to replace a lost document in a situation where all relevant facts had been disclosed to the investigating agency [IRS]". The Referee added that "it does not appear that the agency has sustained any damage or that the government's position was compromised". In view of respondent's clear record and good reputation in the community, the Referee opined that "it is unlikely that suspension from practice or similar sanction would serve any useful purpose".

We agree with the Referee's findings and conclusions and therefore confirm his report in all respects. In doing so, we wish to make clear that we in no way condone respondent's actions in submitting a fabricated document to the IRS. His conviction of a misdemeanor in Federal court as a result of these acts constitutes professional misconduct warranting discipline. However, as found by the Referee, the record supports the conclusion that respondent's actions were not intended to

---

* It should be noted that the stock purchase payment made to Martha Gellert on December 28, 1978 was made from funds of the corporation and that the original revised agreement signed by the Gellerts on February 9, 1979 was subsequently found by respondent and turned over to the IRS.

defraud the Government, nor were they committed to evade or defeat taxes. In the words of the United States Magistrate at the sentencing, respondent's transgression amounted to "an error by an attorney and a CPA merely attempting to save some time, perhaps committing a shortcut". The magistrate also noted in mitigation that respondent in no way profited or benefited from the submission of the document in question and that the Government was not prejudiced.

In view of the foregoing, and considering respondent's previously unblemished record, his full cooperation in this proceeding and his reputation for honesty and integrity in the community as attested to in several character affidavits, we determine that censure is the appropriate discipline.

Respondent censured. Mahoney, P. J., Kane, Main, Casey and Levine, JJ., concur.